**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**JOSEPH MAULDIN**

                                        **Plaintiff,**                    **11-CV-107A(Sr)**

**v.**

**MICHAEL KIFF, et al.,**

                                        **Defendants.**

---

## REPORT, RECOMMENDATION AND ORDER

        This matter was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #8.


        Currently before the Court is defendants' motion for summary judgment for failure to exhaust administrative remedies as required by the Prisoner's Litigation Reform Act ("PLRA").  Dkt. #43.  For the following reasons, it is recommended that defendants' motion be granted.


## BACKGROUND

        In an Incident Report dated September 28, 2010, Michael Kiff, a Corrections Officer at the Niagara County Jail, reported the following:

        1.     While conducting a routine cell inspection located
                in cell 1 Pod 2 belonging to Joe Mauldin I did find
                the following items stored in excess: pillow,
                blanket, sheets, towels, wash clothes [sic], bread,
                mustard, ketchup, medical tape, underwear, t-
                shirts, socks, request slips, officer gloves, office
                paper towels, wrist band, Polaroid photo, books,
                magazines, 3 breathing machines that were not
                authorized by medical.

2.    I also found altered wires and photos glued to your cell door.

3.    Inmate Joseph Mauldin began to become [sic] very aggitated [sic] and [sic] yelling at this writer, he did enter the cell that I was in, in a very threatening manner and saying [sic] that he was going to file a grievance against me.

4.    This writer then ordered inmate Mauldin to back out of the cell, he did not comply on the first or second order to do so, I then . . . walked towards him thus making him back out of the cell, I then ordered him to sit in the chair until I was finished with the cell search, he did not comply [sic] this writer did assist him into the chair.

5.    Officer Payne entered pod 2 and hand cuffed inmate Mauldin and escorted him out of the pod.[1]

* * *

8.    Disciplinary charges were filed and Sgt Zalewski was notified.

Dkt. #50-1, p.2.

At the disciplinary hearing, plaintiff pled guilty to the following rule violations:

2 -    failure to obey a lawful order by a Corrections Officer;

---

[1] C.O. Payne affirms that on the morning of September 28, 2010, he observed C.O. Kiff conducting a search of plaintiff's cell from the Unit Control Room by camera.  Dkt. #51-1, ¶¶ 5-7.  C.O. Payne affirms that plaintiff appeared to become agitated; that C.O. Kiff directed plaintiff to sit down on the chair outside of his cell; and that plaintiff failed to remain seated, prompting C.O. Payne to walk from the Unit Control Room to plaintiff's cell, where he handcuffed plaintiff and escorted him away from the area.  Dkt. #51-1, ¶¶ 8-13.  C.O. Payne affirms that he did not observe C.O. Kiff strike plaintiff, nor did plaintiff complain to C.O. Payne that C.O. Kiff had punched him.  Dkt. #51-1, ¶¶ 14-15.

> 5 -   failure to abide by procedures and instructions
>        stated in the Inmate Handbook or as directed by
>        unit/housing officer;
>
> 9 -   any conduct which disturbs the safety, security
>        and good order of the facility;
>
> 22 -  placing or hanging photos, posters or other items
>        on the walls or beds or defacing a cell or any area
>        in a housing unit; and
> 50 -  possession of any facility issued or owned item
>        which is found altered or stored in excess

and was found guilty of:

> 12 -  threatening an officer, staff member or another
>        inmate - either spoken, in writing or by gesture;
>        and
>
> 25 -  verbal harassment of employees, including
>        insolent, abusive and/or obscene language or
>        gestures.

Dkt. #50-1, p.4.  Plaintiff was sentenced to 40 days administrative segregation with loss

of privileges.  Dkt. #50-1, p.4.


Inmate Grievance Coordinator ("IGC"), Kevin Payne affirms that he

received a grievance from plaintiff during the first week of October, 2010 in which

plaintiff alleged that he was assaulted by C.O. Kiff during a cell search on September

28, 2010.  Dkt. #47-1, ¶ 21; *See* Dkt. #49-1, p.6.  Before logging the grievance, IGC

Payne spoke with plaintiff, who informed IGC Payne

> that he was willing to make the grievance "'go away"
> (Mauldin's words) if [IGC Payne] allowed him to distribute
> some of his property to other inmates.

Dkt. #47-1, ¶ 28.  When IGC Payne informed plaintiff that he was agreeable to such a

resolution, IGC Payne affirms that plaintiff "took physical possession of the grievance

form."  Dkt. #47-1, ¶ 29.  As a result, the grievance was never logged or assigned a

number.  Dkt. #47-1, ¶ 30.

Plaintiff filed Grievance #10-187 on October 25, 2010.  Dkt. #47-1, ¶ 14. This grievance states:

> On 9/28/2010 I was written up and physically assaulted by CO Michael Kiff, which I'm in punitive seg due to this write-up.  I filed a grievance on this matter which was resolved and on the last two previous occasions I've seen CO Michael Kiff I've been harassed and threatened that he was going to cause me physical pain the next time he searches my cell. He stated you will feel real pain the next time I search your cell.  These incidents took place on 10/20/2010 at 2:45 and on 10/25/2010 at 2:15 while he was on the second floor.

Dkt. #49-1, p.2; *See* Dkt. #44-1, pp.11-12.

IGC Payne met with C.O. Kiff and plaintiff regarding Grievance #10-187 on October 26, 2010.  Dkt. #49-1, p.4; *See* Dkt. #44-1, pp.11-12.  With respect to the allegation regarding the cell search, C.O. Kiff referred IGC Payne to his incident report dated September 28, 2010. Dkt. #49-1, p.4.  With respect to the remaining allegations, C.O. Kiff stated:

> On 20 October 2010 I do not recall seeing inmate Mauldin anywhere in or outside of this facility.  On 25 October 2010 I did escort 5 inmates back to their housing units.  I did take 2 to pod 1 and 1 to pod 4.  The two remaining inmates Garcia and Fierro were taken across the second floor corridor to h, I and j blocks at which time I handed over inmate Garcia to Officer Woodburn.  While going to the second floor middle gate with inmate Fierro I did pass inmate Mauldin, no words were spoken to inmate Mauldin.  Inmate Fierro was taken to the east dorm and handed over to Officer Meisenburg.

Dkt. #49-1, p.4.  IGC Payne interviewed inmates Garcia and Fierro, who "stated that they did not see or hear any inter[a]ction between Kiff and Mauldin," and Officer Woodburn, who was assigned to plaintiff's housing unit "and did not witness any problems between Kiff and Mauldin."  Dkt. #49-1, p.5.  IGC Payne provided plaintiff with his written determination denying the grievance on October 27, 2010, informing plaintiff that

-4-

> I was unable to find any witness to substantiate any
> incidents of harassment.  Grievant was previously written up
> for Rule infractions by C.O. Kiff and seems to have a
> problem with officer.  Grievant previously ripped up
> grievance on incident where write up was issued.  Grievance
> co-ordinator was unable to render decision do [sic] to that
> fact.

Dkt. #49-1, p.3; *See* Dkt. #47-1, ¶ 15.  Plaintiff did not appeal this determination.  Dkt. #47-1, ¶ 15.


Plaintiff commenced this action on February 7, 2011, pursuant to 42 U.S.C. § 1983, alleging that during the course of a search of his cell at the Niagara County Jail, where plaintiff was being held as a pre-trial detainee in the custody of the United States Marshals Service, C.O Kiff removed photographs from the door of plaintiff's cell in a rough and potentially destructive fashion, prompting plaintiff to complain. Dkt. #2, ¶ 6.  In response to his complaints, plaintiff alleges that C.O. Kiff exited plaintiff's cell "and in the presence of CO Newman[2] and CO Payne (witnessing by way of camera), and in the visual observation of detainees . . ., did assault [plaintiff] by punching him in the mid section and forcing him down into a chair, both maliciously and sadistically, for the very purpose of causing harm and inflicting punishment unlawfully." Dkt. #2, ¶ 7.


At his deposition, plaintiff acknowledged receipt of an Inmate Handbook setting forth the rules at the Niagara County Jail, as well as the grievance procedure for resolving disputes. Dkt. #44-1, pp.9-10.  Plaintiff acknowledged prior grievances which

---

[2] C.O. Newman affirms that he was stationed at the desk in plaintiff's housing unit on the morning of September 28, 2010, where he had a partial view of the area in front of plaintiff's cell. Dkt. #51-2, ¶¶ 4-7.  C.O. Newman observed C.O. Kiff direct plaintiff to remain seated in the chair outside of his cell and observed plaintiff get up from his chair to argue with C.O. Kiff. Dkt. #51-2, ¶¶ 9-10.  C.O. Newman affirms that plaintiff and C.O. Kiff raised their voices, but observed no physical contact.  Dkt. #51-2, ¶ 11.

he appealed, as well as prior grievances which he did not appeal.  Dkt. #44-1, p.19.

With respect to the September 28, 2010 incident, plaintiff denied any agreement to

resolve his grievance in exchange for being able to give his possessions to other

inmates.  Dkt. #44-1, p.15. Specifically, plaintiff testified:

> I didn't agree to it.  I didn't agree to throw the grievance out
> in exchange to give my food away.  That wasn't [a]n
> agreement.  We did talk about, you know, me being able to
> give my stuff away, but he never said anything to me about
> disposing of the grievance for that to happen.

Dkt. #44-1, p.15.  Plaintiff denied taking the grievance and was unaware of what

happened with it.  Dkt. #44-1, p.16.

Notwithstanding notification by counsel for the defendants as required

under *Irby v. N.Y. City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001), concerning the

requirements of Rule 56 of the Federal Rules of Civil Procedure and the perils of failing

to respond to a motion for summary judgment, including that such failure may result in

the granting of judgment in favor of defendants (Dkt. #52), plaintiff has not filed a

response to the instant motion.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the

court must assess whether there are any material factual issues to be tried while

resolving ambiguities and drawing reasonable inferences against the moving party, and

must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798

(W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

## Exhaustion of Administrative Remedies

The PLRA states:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In *Porter v. Nussle*, the Supreme Court held that exhaustion of administrative remedies in 1997(e) cases is

mandatory[3] and should be applied broadly.  534 U.S. 516, 524 (2002).  The Supreme

Court reasoned that requiring inmates to follow the grievance process would ultimately

"reduce the quantity and improve the quality of prisoner suits;" filter out frivolous claims;

and for those cases that eventually come to court, the administrative record could

potentially clarify the legal issues.  *Id.* at 524-25.  "Even when the prisoner seeks relief

not available in grievance proceedings" – such as monetary damages – "exhaustion is a

prerequisite to suit."  *Id.* at 524, *citing Booth v. Churner*, 532 U.S. 731, 741 (2001).

Thus, the "PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong."  *Id.* at 532.


        The PLRA requires "proper exhaustion.  *Woodford v. Ngo*, 548 U.S. 81,

93 (2006).  In other words, prisoners must complete the administrative review process

in accordance with the  procedural rules set forth in the prison grievance process.

*Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012), *citing Jones v. Bock*, 549 U.S.

199, 218 (2007).  Thus, "untimely or otherwise procedurally defective attempts to

secure administrative remedies do not satisfy the PLRA's exhaustion requirement."

*Ruggerio v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006), *quoting Woodford* 548

U.S. at 83-84.


        The PLRA's exhaustion requirement may be excused when: (1)

administrative remedies are not available to the prisoner; (2) defendants have either

waived the defense of failure to exhaust or acted in such a way as to estop them from

raising the defense; or (3) special circumstances, such as a reasonable

misunderstanding of the grievance procedures, justify the prisoner's failure to comply

---

[3] Although mandatory, administrative exhaustion is an affirmative defense rather than a jurisdictional predicate.  *Jones v. Bock,* 549 U.S. 199, 216 (2007); *Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003); *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).

with the exhaustion requirement. *Ruggerio v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) In *Amador v. Andres*, however, the Court of Appeals for the Second Circuit questioned, without deciding, the continued viability of the doctrines of estoppel and special circumstances following *Woodward v. Ngo*.  655 F.3d 89, 102 (2d Cir. 2011).

The administrative remedies available to county jail inmates require the submission of a grievance to the Inmate Grievance Coordinator ("IGC"), within five days of the occurrence.  9 N.Y.C.R.R. § 7032.4(d).  Within five business days of the receipt of a grievance, the IGC is required to issue a written determination to the inmate, who has two business days to appeal the determination to the Chief Jail Administrator ("CJA").  9 N.Y.C.R.R. § 7032.4(I)-(j).  The CJA is required to issue a written determination on the appeal to the plaintiff within five business days of the filing of the appeal.  9 N.Y.C.R.R. § 7032.4(k).  The inmate may appeal the CJA's determination to the State Commission of Correction, Citizen's Policy & Complaint Review Council, within three business days of the denial of the grievance.  9 N.Y.C.R.R. § 7032.5(a). "All levels of the grievance procedure must be exhausted before an inmate may commence litigation."  *Price v. Engert*, 589 F. Supp.2d 240, 245 (W.D.N.Y. 2008).

Notwithstanding the contradiction between plaintiff's statement in the October 25, 2010 grievance that his complaint relating to the September 28, 2010 assault was resolved and his subsequent deposition testimony that he was unaware of what happened to that complaint (Dkt. #49-1, p.2), it is undisputed that plaintiff failed to complete the grievance process outlined in the Inmate Handbook regarding either complaint despite his knowledge and prior use of the grievance process.  Dkt. #44-1, pp.9-10 & 19. Defendants raised plaintiff's failure to exhaust administrative remedies as an affirmative defense in their Answer (Dkt. #12, p.8), and plaintiff has proffered no response to raise any question of fact as to the unavailability of administrative procedures or any special circumstance which may have prevented him from properly

exhausting his claim.  Accordingly, it is recommended that defendants' motion to dismiss the complaint for failure to properly exhaust his administrative remedies as required by the PLRA be granted.

## CONCLUSION

For the reasons set forth above, it is recommended that defendants' motion for summary judgment (Dkt. #43), be granted.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

-10-

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
                **March 26 , 2014**

                          ___*S/ H. Kenneth Schroeder, Jr.*___
                          **H. KENNETH SCHROEDER, JR.**
                          **United States Magistrate Judge**